IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE FLONASE ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>Direct Purchaser Actions | Case No. 08-cv-3149 (Direct)<br><br>**Hon. Anita B. Brody** |

**FINAL ORDER AND JUDGMENT APPROVING SETTLEMENT**

The Court, having considered (a) plaintiffs' motion and memorandum in support of the motion for preliminary approval of Settlement and accompanying exhibits (Dkt. Nos. 480, 481, Ex. A-L); (b) plaintiffs' motion and memorandum in support of motion for an award of attorney fees and expenses (Dkt. Nos. 486 and 486-1); (c) the declaration by co-lead counsel Thomas M. Sobol and Joseph H. Meltzer in support of the direct purchaser plaintiffs' motion for an award of attorneys' fees and expenses (Dkt. No. 486-2); (d) direct purchaser plaintiffs' motion and memorandum of law in support of unopposed motion for final approval of Settlement; (e) the declaration of co-lead counsel Thomas M. Sobol and Joseph H. Meltzer in support of direct purchaser plaintiffs' unopposed motion for final approval of Settlement; and (f) the concluded fairness hearing and all other prior proceedings herein, pursuant to Rules 23 and 54(b) of the Federal Rules of Civil Procedure, and in accordance with the terms of the Settlement Agreement between plaintiffs American Sales, LLC f/k/a American Sales, Inc. ("American Sales"), and Meijer, Inc. and Meijer Distribution, Inc. ("Meijer") (collectively, "plaintiffs"), individually and on behalf of the certified direct purchaser class in the above-captioned actions In re Flonase Antitrust Litigation, Case No. 08-3149 (E.D. Pa.) (the "Actions"), and defendant SmithKline Beecham Corporation d/b/a GlaxoSmithKline, including GlaxoSmithKline LLC and

GlaxoSmithKline plc ("GSK" or "Defendant") dated November 15, 2012 (the "Settlement Agreement"),

**IT IS HEREBY ORDERED** as follows:

1. This final order and judgment incorporates by reference the definitions in the Settlement Agreement, and all terms used herein shall have the same meanings set forth in the Settlement Agreement. As set forth in the Court's November 10, 2010 Order (Dkt. No. 161), as modified by the Court's February 9, 2011 Order (Dkt. No. 215), and as reflected in the notice approved by the Court to be sent to the Class by Order dated April 25, 2011, and which notice was duly disseminated pursuant to Court Order (the "Class certification order"), the "Class" is defined as follows:

> All persons or entities in the United States and its territories who purchased Flonase nasal spray directly from Defendant (or any of its predecessors or affiliates) at any time from May 19, 2004 until March 6, 2006, excluding defendant, its predecessors, directors, management, employees, subsidiaries, parent or affiliates, and government entities or persons.

**A.    Notice to the Class.**

2. Pursuant to the Court's Class certification order, Court-approved notice was disseminated by First-Class mail to all members of the Class and publication of the notice was made in the industry publication known as *The Pink Sheet* and in *The Pink Sheet* electronic newsletter. No Class member requested exclusion from the Class. The Class as certified on November 10, 2010, as modified on February 9, 2011, is hereinafter referred to as the "Class." The Class includes, among other entities, the named plaintiffs American Sales, LLC; and Meijer, Inc. and Meijer Distribution, Inc. by virtue of an assignment of rights from Class member Frank W. Kerr, Co. dated October 4, 2002.

3.     This Court has jurisdiction over this action and over each of the parties and over all members of the Class. As set forth in more detail in the Settlement Agreement, defendant GSK has agreed to pay, and has timely paid, a total of $150 million to settle this action.

4.     As required by this Court in the preliminary approval order, on February 14, 2013, notice of the proposed Settlement was mailed by First-Class mail to all members of the Class to the last known address of each entity within the definition of the Class. Also as required by the preliminary approval order, on February 18, 2013 the publication notice appeared in the industry publication *The Pink Sheet*. On February 18, 2013 and March 4, 2013 notice of the Settlement appeared in *The Pink Sheet* electronic newsletter. The notice was also posted, along with relevant litigation and Settlement documents, on the settlement website www.FlonaseDirectSettlement.com, created specifically for the purpose of advising Class members of the fact and terms of the Settlement.

5.     Such notice to members of the Class is hereby determined to be fully in compliance with requirements of Fed. R. Civ. P. 23(e) and due process of law and is found to be the best notice practicable under the circumstances and to constitute due and sufficient notice to all entities entitled thereto.

6.     Due and adequate notice of the proceedings having been given to the Class of their right to object to the Settlement, the plan of allocation, and class counsel's application for incentive payments for named plaintiffs and attorneys' fees and reimbursement of expenses associated with the actions, and a full opportunity having been offered to the Class to participate in the fairness hearing, it is hereby determined that all Class members are bound by this final order and judgment.

### B. Approval of the Settlement.

7. The parties' Settlement resulted from an extensive investigation of facts, complete discovery, expert analysis and reports, motion practice, and development of the case for trial. The Settlement of this direct purchaser class action was not the product of collusion between the representative plaintiffs American Sales and Meijer, the direct purchaser class, and GSK or their respective counsel, but rather was the result of *bona fide* and arm's-length negotiations conducted in good faith between class counsel and GSK's counsel.

8. The Court has held a hearing to consider the fairness, reasonableness and adequacy of the proposed Settlement, and has been advised that there have been no objections to the Settlement from any members of the Class, and also that Class members Cardinal Health, Inc. and McKesson Corp. have explicitly stated their support for the Settlement and class counsel's requested attorneys' fees and expense reimbursement, and the requested incentive awards to the representative plaintiffs American Sales and Meijer.

9. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court hereby approves the Settlement and finds that the Settlement is, in all respects, fair, reasonable and adequate to Class members. Accordingly, the Settlement shall be consummated in accordance with the terms and provisions of the Settlement Agreement. The Settlement is fair, reasonable and adequate in light of the factors set forth in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), as detailed in the accompanying memorandum.

### C. Approval of the plan of distribution.

10. The Court approves the plan of distribution (the "plan") of the Settlement proceeds (net of attorneys' fees, reimbursed expenses and incentive awards) proposed by plaintiffs. The plan proposes to distribute the net Settlement proceeds *pro rata* based on Class members' purchases of Flonase during the Class period, and does so fairly and efficiently. It

directs Rust Consulting, Inc., the claims administration firm retained by class counsel and approved by the Court in the preliminary approval order, to distribute the net Settlement proceeds to Class members in the manner provided in the plan.

11. Class members shall look solely to the net Settlement proceeds for settlement and satisfaction against Defendant of all claims that are released by this Order, and shall not under any circumstances be entitled to any further compensation from Defendant with respect to any claims released by this Order. Except as provided by this Order, no Class member shall have any interest in the Settlement proceeds or any portion thereof.

### D. Approval of the proposed claim form.

12. The Court approves the proposed claim form to be used by Rust to notify each Class member of Rust's estimate of the Class member's purchases of Flonase during the class period, based on data produced by GSK in the litigation and provided to Rust by class counsel, as well as Rust's estimate of the Class member's *pro rata* share of the net settlement fund.

### E. Dismissal of claims.

13. All claims in the above-captioned Actions against GSK are hereby dismissed with prejudice and in their entirety, on the merits, and without costs.

14. As used throughout this Order, and specifically in this section E, references to the "Class," "members of the Class," or "Class members" refer to members of the Class and include any of their past, present or future officers, directors, stockholders, attorneys, employees, legal representatives, trustees, agents, parents, subsidiaries, general and limited partners, heirs, executors, administrators, purchasers, predecessors, successors and assigns, acting in their capacity as such.

15. In accordance with the Settlement Agreement, upon the Settlement Agreement becoming final and effective in accordance with its terms:

    a. Defendant and its past, present and future parents, subsidiaries, divisions, affiliates, stockholders, officers, directors, insurers, general or limited partners, employees, agents, attorneys, and any of their legal representatives (and the predecessors, heirs, executors, administrators, successors, purchasers, and assigns of each of the foregoing) (the "Released Party" or "Released Parties") are and shall be released and forever discharged from all manner of claims, demands, actions, suits, causes of action, damages whenever incurred, and liabilities of any nature whatsoever (whether such claims, demands, actions, suits, causes of action, damages or liabilities arise or are incurred before, during or after the date of the Settlement Agreement), including costs, expenses, penalties and attorneys' fees known or unknown, suspected or unsuspected, in law or equity, that plaintiffs or any member or members of the Class, whether or not they object to the Settlement and whether or not they make a claim upon or participate in the Settlement Fund, ever had, now has, or hereafter can, shall or may have, directly, indirectly, representatively, derivatively or in any other capacity, relating to any conduct, events or transactions, prior to the date hereof, alleged or which could have been alleged in the Actions, relating to fluticasone propionate nasal sprays (branded Flonase and/or its generic equivalents) (the "Released Claims"). Except for enforcing the Settlement Agreement, each member of the Class shall not, hereafter, seek to establish liability against any Released Party based, in whole or in part, on any of the Released Claims. Without in any way limiting the definition of Released Parties, the following specific entities are released parties: SmithKline Beecham Corporation d/b/a GlaxoSmithKline; GlaxoSmithKline LLC; GlaxoSmithKline Holdings (America) Inc.; GlaxoSmithKline plc; Smith Kline Beecham plc; GlaxoWellcome plc.; GlaxoSmithKline Finance plc.; GlaxoSmithKline Services Unlimited; and Smith Kline Beecham Limited.

b. In addition, plaintiffs and each Class member hereby expressly waives and releases, upon the Settlement becoming final and effective pursuant to the provisions of the Settlement Agreement, any and all provisions, rights and benefits conferred by § 1542 of the California Civil Code, which reads:

> Section 1542.<u>General Release -- Claims Extinguished</u>. A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor;

or rights and benefits conferred by any law of any state or territory of the United States or any other jurisdiction or principle of common law, which is similar, comparable or equivalent to § 1542 of the California Civil Code. Plaintiffs and each Class member may hereafter discover facts other than or different from those which he, she or it knows or believes to be true with respect to the claims which are the subject matter of this paragraph, but each plaintiff and each Class member hereby expressly waives and fully, finally and forever settles and releases, upon the Settlement Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that would otherwise fall within the definition of Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. Plaintiffs and each Class member also hereby expressly waives and fully, finally and forever settles and releases any and all claims it may have against any Released Party under §17200, et seq., of the California Business and Professions Code, or any similar, comparable or equivalent provision of the law of any other state or territory of the United States or other jurisdiction or principle of common law, which claims are hereby expressly incorporated into the definition of Released Claims.

c. Plaintiffs, their counsel, and the Claims Administrator will ensure that each claim form contains a copy of the releases set forth in paragraph 10 (a) through (c) of the Settlement Agreement, which shall be signed by each member of the Class or its authorized representative as a precondition to receiving any portion of the settlement fund. The releases set

forth above shall be binding and effective as to all Class members and each Class member shall be permanently barred and enjoined from asserting any Released Claims as defined herein.

        d.      The releases set forth above shall not release any claims arising in the ordinary course of business between plaintiffs, Class members and the Released Parties concerning product liability, breach of warranty or contract (other than breach of warranty or contract based in whole or in part on any conduct challenged in the Actions), personal or bodily injury.

    **F.**    **Award of attorneys' fees.**

16.    Class counsel have moved for an award of attorneys' fees and reimbursement of expenses. Pursuant to Rules 23(h)(3) and 54(d) of the Federal Rules of Civil Procedure, and pursuant to the factors for assessing the reasonableness of a class action fee request as set forth in *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000), and *In re Prudential Ins. Co. of American Sales Practices Litig.*, 148 F.3d 283, 340 (3d Cir. 1998), this Court awards a fee of 33 1/3 percent of the settlement fund, in the amount of $50,000,000, plus interest accrued thereon, if any. The Court finds this award to be fair and reasonable, as explained in the accompanying memorandum.

17.    Further, class counsel are hereby awarded $2,069,433 from the settlement fund to reimburse them for the expenses they incurred in the prosecution of this lawsuit, which expenses the Court finds to be fair, and reasonably incurred to achieve the benefits to the Class obtained in the settlement to the Class. The awarded fees and expenses shall be paid to class counsel from the settlement fund in accordance with the terms of the Settlement Agreement. Co-lead counsel shall allocate the fees and expenses among class counsel.

18.    Any and all disputes arising out of or related to the Settlement or the Settlement Agreement must be brought by Defendant, plaintiffs and each member of the Class exclusively

in this Court. Without affecting the finality of this judgment, the Court retains exclusive jurisdiction over the Settlement and Settlement Agreement, including the administration of the Settlement Agreement, the plan of distribution, and in order to determine any issues relating to attorneys' fees and expenses and any distribution to members of the Class. In addition, without affecting the finality of this judgment, GSK and each member of the Class hereby irrevocably submit to the exclusive and continuing jurisdiction of the Court for any suit, action, proceeding or dispute arising out of or relating to the Settlement or Settlement Agreement or the applicability or interpretation of the Settlement Agreement, including, without limitation any suit, action, proceeding or dispute relating to the release provisions therein, except that this submission to the Court's jurisdiction shall not prohibit (a) any Released Party from asserting in the forum in which a claim is brought that the release included in the Settlement Agreement is a defense, in whole or in part, to such claim or, (b) in the event that such a defense is asserted in that forum, and this Court determines that it cannot bar the claim, the determination of the merits of the defense in that forum.

19. Class representative American Sales is hereby awarded $50,000 from the Settlement Fund. Class representative Meijer is hereby awarded $40,000 from the Settlement Fund. These payments are in recognition of the work these plaintiffs undertook in representing the Class, which amount is in addition to whatever monies these plaintiffs will receive from the settlement fund pursuant to the plan of distribution. The Court finds these awards to be fair and reasonable, for the reasons stated in the accompanying memorandum.

20. Subject to the terms set forth in paragraph 12 of the Settlement Agreement, if final approval is reversed, vacated, or otherwise modified on appeal, or if appellate review is sought and on such review final judgment is reversed, vacated, or modified, the Settlement

Agreement shall be terminated upon the election of either (a) Plaintiffs, through Class Counsel, or (b) GSK.

21. In the event the Settlement does not become final in accordance with the terms of the Settlement Agreement, this final order and judgment shall be rendered null and void as provided by the Settlement Agreement, shall be vacated, and all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Settlement Agreement. The Settlement Fund, inclusive of any interest, shall be repaid to GSK. However, the costs of notice and administration validly disbursed and paid for from the Settlement Fund need not be repaid to GSK.

22. The Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties and to the Released Parties. Without limiting the generality of the foregoing, each and every covenant of and agreement in the Settlement Agreement by the plaintiffs and their counsel shall be binding on each member of the Class.

23. The Court hereby directs that this judgment of dismissal be entered by the clerk forthwith pursuant to Federal Rules of Civil Procedure 54(b). The direction of the entry of final judgment pursuant to Rule 54(b) is appropriate and proper because this judgment fully and finally adjudicates the claims of the plaintiffs and the Class against Defendant in the Actions, allows consummation of the Settlement, and will expedite the distribution of the Settlement proceeds to Class members.

Dated: ___6/14/13___         ___s/Anita B. Brody___
                             Anita B. Brody, J.